**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| GEORGE PETROPOULOS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MERGE HEALTHCARE INCORPORATED, MICHAEL W. FERRO, JR., JEFFERY A. SURGES, STEVEN M. ORESKOVICH and JUSTIN C. DEARBORN,<br><br>Defendants. | No.<br><br>**CLASS ACTION**<br><br>COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff George Petropoulos ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Merge Healthcare Incorporated ("Merge" or "the Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Merge; and (c) review of other publicly available information concerning Merge.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of purchasers of Merge common stock between August 1, 2012 and January 7, 2014, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Merge is a provider of clinical systems and innovations. Merge claims that the Company's enterprise and cloud-based solutions for image intensive specialties provide access to any image, anywhere, any time. Merge also provides clinical trials software and other health data and analytics solutions that engage consumers in their personal health.

3. On January 8, 2014, the Company disclosed that it was revising its previously reported subscription backlog totals after an internal review concluded that a former sales employee in its eClinical business had falsified the existence or amount of certain customer contracts with an apparent value of approximately $5.8 million and $9.4 million in 2012 and 2013, respectively.

4. On this news, shares of the Company declined $0.21 per share, or 8.33%, to close on January 8, 2014, at $2.31 per share, on unusually heavy volume, and further declined by as

much as an additional $0.21 per share, or approximately 9%, on January 9, 2014.

5. Throughout the Class Period, Defendants made false and/or misleading statements and failed to disclose material adverse facts about the Company's business, operations and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the existence or amount of certain customer contracts with respect to the Company's eClinical business had been falsified; (2) that, as a result, the Company's reported subscription backlog was overstated; (3) that the Company lacked adequate internal and financial controls; and (4) that, as a result of the foregoing, the defendants' statements about the Company's business, operations and prospects lacked a reasonable basis and were materially false and misleading at all relevant times.

6. As a result of Defendants' wrongful acts and omissions and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information,

occurred in substantial part in this Judicial District.

10. In connection with the acts, transactions and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications and the facilities of a national securities exchange.

## PARTIES

11. Plaintiff George Petropoulos, as set forth in the accompanying certification, incorporated by reference herein, purchased Merge common stock during the Class Period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12. Defendant Merge is a Delaware corporation with its principal executive offices located at 350 North Orleans Street, 1st Floor, Chicago, Illinois 60654.

13. Defendant Michael W. Ferro, Jr. ("Ferro") was, at times relevant hereto, Chairman of the Company until his resignation on August 26, 2013.

14. Defendant Jeffery A. Surges ("Surges") was, at all relevant times, Chief Executive Officer ("CEO") and a director of the Company until his resignation on August 5, 2013.

15. Defendant Steven M. Oreskovich ("Oreskovich") was, at all relevant times, Chief Financial Officer ("CFO") of Merge.

16. Defendant Justin C. Dearborn ("Dearborn") was, at all relevant times, President and a director of Merge, and was, at all relevant times, CEO of Merge since August 5, 2013.

17. Defendants Ferro, Surges, Oreskovich and Dearborn, are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Merge's reports to

the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

18. Merge is a provider of clinical systems and innovations. Merge claims that the Company's enterprise and cloud-based solutions for image intensive specialties provide access to any image, anywhere, any time. Merge also provides clinical trials software and other health data and analytics solutions that engage consumers in their personal health.

### Materially False and Misleading Statements Issued During the Class Period

19. The Class Period begins on August 1, 2012. After the close of trading on July 31, 2012, the Company issued a press release titled "Merge Reports Second Quarter Sales Growth of 13%." Therein, the Company, in relevant part, stated:

> ***Signs new clients under subscription model and is named #1 VNA in the world***
>
> Chicago, IL, 31 Jul 2012

Merge Healthcare Incorporated (NASDAQ: MRGE), a leading provider of clinical systems and innovations that seek to transform healthcare, today announced its financial and business results for the second quarter of 2012.

"Our second quarter results reflect solid revenue growth even as we move to a new business model," said Jeff Surges, CEO of Merge Healthcare. "With our premier client base, industry-leading solutions and expansion into new markets, we are well-positioned for continued success in 2012."

**Financial Highlights:**

- Revenue was $62.9 million ($63.4 million on a pro forma basis) in the quarter, compared to $55.6 million ($57.0 million on a pro forma basis) in the second quarter of 2011 - an increase of 13%.
- Adjusted EBITDA was $13.6 million, representing 21% of pro forma revenue in the quarter, compared to $17.1 million and 30% in the second quarter of 2011.
- Subscription-based pricing arrangements in which software, hardware and professional services are recognized ratably over a number of years generated 15% of total revenue in the quarter.

**Business Highlights:**

- Signed multiple subscription-based contracts including an extension of our strategic partnership with one of the largest imaging practices in the country;
- Extended our leadership in enterprise-wide imaging and was named the world's #1 Vendor Neutral Archive (VNA) provider;
- Added five iConnect® contracts with leading healthcare systems including Franciscan Alliance, Children's Hospital & Research Center in Oakland, Our Lady of Lourdes and St. Vincent Hospital;
- Executed 12 contracts for the Merge Meaningful Use (MU) platform within Radiology and Orthopedics settings, adding another 125 physicians to those who have already selected Merge;
- Released eClinical OS, a Software as a Service (SaaS) application, offering an end-to-end solution for clients to design, deploy and manage clinical trials;
- Continued the nationwide replacement of disconnected health station units currently in retail pharmacy and corporate settings with new, connected Merge Health Stations.

(Emphasis in original).

20. On August 6, 2012, Merge filed its Quarterly Report on Form 10-Q with the SEC

for the second quarter of 2012. The Form 10-Q was signed by Defendants Surges and Oreskovich, and reaffirmed the Company's previously announced financial results. The Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Surges and Oreskovich, who certified:

> 1. I have reviewed this quarterly report on Form 10-Q of Merge Healthcare Incorporated;
>
> 2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;
>
> 3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;
>
> 4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:
>
> (a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;
>
> (b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;
>
> (c) valuated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation;

(d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's Board of Directors (or such other persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

21. On October 31, 2012, the Company issued a press release titled "Merge Reports 2012 Subscription Backlog Up 62%." Therein, the Company, in relevant part, stated:

***Delivers third quarter revenue of $61 million and announces 2013 guidance of pro forma revenue range of $265 - $275 million***

Chicago, IL, 31 Oct 2012

Merge Healthcare Incorporated (NASDAQ: MRGE), a leading provider of clinical systems and innovations that seek to transform healthcare, today announced its financial and business results for the third quarter of 2012.

"Our third quarter results continue to demonstrate our transition to a subscription model with both new and existing clients," said Jeff Surges, CEO of Merge Healthcare. "Additionally, we are providing annual guidance for 2013 on revenue, adjusted EBITDA and subscription backlog growth based on the progress we have made in 2012."

**Financial Highlights:**

- Revenue increased to $60.4 million ($61.0 million on a pro forma basis) in the quarter, from $60.1 million ($60.6 million on a pro forma basis) in the third quarter of 2011;
- Adjusted EBITDA was $12.5 million, representing 21% of pro forma revenue in the quarter, compared to $14.5 million and 24% in the third quarter of 2011;
- Subscription-based pricing arrangements in which software, hardware and professional services are recognized ratably over a number of years generated 15.1% of total revenue in the quarter and subscription backlog grew 62% since the prior year end;
- Established 2013 guidance of revenue in the range of $265 - $275 million with an adjusted EBITDA range of 22-24% and expected subscription backlog growth by the end of 2013 of at least $25 million.

**Business Highlights:**

- Added 15 iConnect® contracts with leading healthcare systems including Dignity Health, Huntington Hospital, Erie Country Medical Center and Coosa Valley, among others;
- Contracted with clients to store over 3.65 million studies in the Merge Honeycomb Archive via subscription-based payment models, including the largest orthopedics practice in the nation;
- Over 776 Meaningful Use eligible providers from 110 Merge clients received $3.1 million in incentives with an additional $10.9 million in incentive payments expected by year end;
- eClinical segment signed over 150 contracts in the quarter resulting in a greater than 100% growth in bookings.

(Emphasis in original).

22. On November 1, 2012, Merge filed its Quarterly Report on Form 10-Q with the SEC for the third quarter of 2012. The Form 10-Q was signed by Defendants Surges and Oreskovich, and reaffirmed the Company's previously announced financial results. The Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Surges and Oreskovich, substantially similar to the certifications contained in ¶ 20, *supra*.

23. On February 18, 2013, the Company issued a press release titled "Merge Reports Subscription Backlog Up 82%." Therein, the Company, in relevant part, stated:

***Delivers fourth quarter sales of $65.1 million and reiterates 2013 guidance of sales range of $265 - $275 million***

Chicago, IL, 18 Feb 2013

Chicago, IL (Feb. 19, 2013) Merge Healthcare Incorporated (NASDAQ: MRGE), a leading provider of clinical systems and innovations that seek to transform healthcare, today announced its financial and business results for the fourth quarter of 2012. Merge also confirmed the conclusion of its previously announced evaluation of strategic alternatives.

"After careful evaluation, we have determined that the alternatives evaluated did not offer more value than our own strategic plan," said Jeff Surges, CEO of Merge Healthcare. "We will continue to build upon the proven success over the last few years and further leverage our portfolio of solutions into a more present and ready marketplace than ever before. In addition, we are reiterating annual guidance for 2013 on revenue, adjusted EBITDA and subscription backlog growth."

**Financial Highlights:**

- Sales increased to $64.7 million ($65.1 million on a pro forma basis) in the quarter, from $64.1 million ($65.1 million on a pro forma basis) in the fourth quarter of 2011;
- Adjusted EBITDA, before consideration of one-time non-cash charges, was $13.9 million, representing 21% of pro forma revenue in the quarter, compared to $15.1 million and 23% in the fourth quarter of 2011 (see table at end of this press release for reconciliation);
- Subscription-based pricing arrangements generated 13.5% of total sales in the quarter and subscription backlog grew 13% in the quarter and 82% for the year; and
- Reiterating 2013 guidance of revenue in the range of $265 - $275 million with an adjusted EBITDA range of 22-24% and expected subscription backlog growth by the end of 2013 of at least $25 million.

**Business Highlights for the Fourth Quarter of 2012:**

- Added 12 iConnect® contracts with leading healthcare systems including Northeast Georgia, Health Ventures, St. John Providence Health System, Edward Hospital and Altru Health System;
- Executed 17 contracts for Merge Cardiology solutions with clients including Borgess Medical Center, DuPage Medical Center, Boca Raton Regional Hospital, St. Thomas and Palos Hospital among others;
- Bookings growth in sales to end-user customers in the Healthcare segment grew by 38% in 2012;
- Merge clients will be eligible to receive an estimated total of $14 million

in Meaningful Use incentive payments by utilizing Merge's Meaningful Use solutions for Radiology and Orthopedics; and

- eClinical signed over 190 contracts in the quarter driving year-over-year bookings growth of 79%.

(Emphasis in original).

24. On March 11, 2013, Merge filed its Annual Report on Form 10-K with the SEC for the 2012 fiscal year. The Company's Form 10-K was signed by Defendant Surges, and reaffirmed the Company's financial results previously announced on February 18, 2013. The Form 10-K also contained Sarbanes-Oxley required certifications, signed by Defendants Surges and Oreskovich, substantially similar to the certifications contained in ¶ 20, *supra*.

25. On April 30, 2013, the Company issued a press release titled "Merge Reports Record First Quarter Sales." Therein, the Company, in relevant part, stated:

> ***Successfully Refinances Existing Debt at Half the Interest Rate***
>
> Chicago, IL, 30 Apr 2013
>
> Merge Healthcare Incorporated (NASDAQ: MRGE), a leading provider of clinical systems and innovations that seek to transform healthcare, today announced its financial and business results for the first quarter of 2013.
>
> "Our record first quarter results, combined with our successful debt refinancing, provides a solid start to the year, an immediate benefit to our bottom-line and confidence in our long-term financial health and stability," said Jeff Surges, CEO of Merge Healthcare. "As health systems look beyond their electronic health record (EHR) implementations and to their next set of strategic priorities, including Meaningful Use Stage Two, we expect to see continued momentum and adoption of our enterprise imaging and subscription-based offerings."
>
> **Financial Highlights:**
>
> - Sales increased to $63.6 million ($64.0 million on a pro forma basis) in the quarter, from $61.0 million ($61.6 million on a pro forma basis) in the first quarter of 2012;
> - Adjusted EBITDA was $12.5 million, representing 19.5% of pro forma revenue in the quarter, compared to $12.5 million and 20.3% in the first quarter of 2012 (see table at end of this press release for reconciliation);

- Subscription-based pricing arrangements generated 15% of total sales in the quarter and subscription backlog grew 16% in the quarter and 74% in the last year; and

**Business Highlights:**

- Announced debt refinancing, which entailed replacing existing 11.75% Notes with a new senior secured credit facilities consisting of a six-year term loan of $255 million and a five-year revolving credit facility of up to $20 million at an initial rate of 6%;
- Added 11 iConnect® contracts with leading healthcare systems including Johns Hopkins, Orion Health, St. Vincent's Healthcare and Southern Illinois Healthcare, among others;
- Executed 7 contracts for Merge HoneycombTM solutions, with clients including Outpatient Imaging Affiliates, Southcoast Medical Imaging and Tri-Valley Orthopaedics, among others;
- Extended and renewed strategic relationships with both Ascension Health, one of the largest health systems in the US, and Centers for Diagnostic Imaging (CDI), one of the largest imaging center chains in the country;
- Backlog in the DNA segment grew from $34.9M to $40.9M and is 100% subscription revenue based.

(Emphasis in original).

26. On May 1, 2013, Merge filed its Quarterly Report on Form 10-Q with the SEC for the 2013 fiscal first quarter. The Form 10-Q was signed by Defendants Surges and Oreskovich, and reaffirmed the Company's financial results previously announced on April 30, 2013. The Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Surges and Oreskovich, substantially similar to the certifications contained in ¶ 20, *supra*.

27. On August 9, 2013, the Company issued a press release titled "Merge Reports Second Quarter Financial Results." Therein, the Company, in relevant part, stated:

> ***Merge announces the resignation of Jeffery Surges and the appointment of Justin Dearborn as CEO***
>
> Chicago, IL, 09 Aug 2013
>
> Chicago, IL (Aug. 9, 2013) Merge Healthcare Incorporated (NASDAQ: MRGE), a leading provider of clinical systems and innovations that seek to transform

healthcare, today announced its financial and business results for the second quarter of 2013. Merge also announced that its board of directors has accepted the resignation of Jeffery A. Surges as Chief Executive Officer and Director of the Company and appointed Justin C. Dearborn, as the Company's new CEO. Additionally, Merge announced that Nancy Koenig has been promoted to Chief Operating Officer of the Company from EVP, Operations and also has been elected to the Company's Board of Directors to fill the vacancy created by Mr. Surges' resignation.

"Speaking on behalf of all of Merge's Directors, I want to apologize for the company's very disappointing second quarter results," said Michael W. Ferro, Jr., Merge's Chairman of the Board and largest shareholder. "We all strongly believe in the company, its products and its employees. Our new leaders, Justin Dearborn and Nancy Koenig, resurrected Merge five years ago, and they are the right team to get the company back on track. I, personally, plan to continue to invest in Merge, whether in response to opportunities in the market or otherwise."

Mr. Dearborn said, "Merge's value proposition continues to be very strong in three distinct market areas: imaging and interoperability, cardiology, and clinical trials. Our spending, on bringing innovative solutions to market, has outpaced our end user markets' readiness for a variety of macro-economic reasons currently clouding hospital spend decision making. We saw a continued reluctance amongst large health systems to move forward with enterprise purchases. Unfortunately, this pause has overshadowed the fourth quarter in a row of very strong bookings and revenue growth from our clinical trials group." Mr. Dearborn joined Merge in 2008 and has served as CEO, Chief Financial Officer and most recently as President and CEO of Merge's DNA reporting segment.

We anticipate recording a pre-tax restructuring charge of approximately $1.0 million to $2.0 million in the third quarter of 2013 primarily for severance and other costs related to certain sales and marketing cost reduction initiatives taken in the quarter.

**Financial Highlights:**

- Sales decreased to $57.2 million ($57.6 million on a pro forma basis) in the second quarter of 2013, from $62.9 million ($63.4 million on a pro forma basis) in the second quarter of 2012;
- Adjusted EBITDA for the second quarter of 2013 was $8.5 million, representing 15% of pro forma revenue for the quarter, compared to $13.6 million and 21% in the second quarter of 2012 (see table at end of this press release for reconciliation);
- Revenue generated from subscription-based pricing arrangements increased to 17% of total sales in the second quarter of 2013 and subscription backlog grew 82% since the second quarter of 2012;

- Debt refinancing reduced Merge's effective cash interest rate by almost 50% (approximately $14.3 million on an annual basis) and extended the maturity of its indebtedness to six years, while also adding a five-year, $20 million revolving credit facility; the refinancing resulted in $23.8 million of one-time expenses, including $20.3 million of cash expenditures incurred in the second quarter of 2013; and
- Cash from business operations increased to $10.6 million in the second quarter of 2013 from $10.2 million in the second quarter of 2012.

**Business Highlights:**

- Added 12 iConnect® contracts with large and small hospitals and imaging centers, including UC San Diego Medical Center, Children's Memorial Hospital, Pioneers Memorial and Radiology Limited, among others;
- Executed 17 contracts for Merge Cardiology products with clients including, Central Washington Hospital, Clinton Memorial Hospital, Borgess Health and St. Vincent Hospital, among others;
- Saw 10 new clients from both large and smaller organizations across all specialties including radiology and orthopedics groups adopt Merge Honeycomb including, Premier Diagnostic, Vista Imaging, North Carolina Orthopedics, Parker University and Pioneers Memorial, among others;
- Backlog for the quarter in the clinical trials segment, which is 100% subscription revenue based, grew from $35.5M at the end of the first quarter of 2013 to $45.7M at the end of the second quarter of 2013.

(Emphasis in original).

28. On August 9, 2013, Merge filed its Quarterly Report on Form 10-Q with the SEC for the 2013 fiscal second quarter. The Form 10-Q was signed by Defendants Dearborn and Oreskovich, and reaffirmed the Company's financial results announced that same day. The Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Dearborn and Oreskovich, substantially similar to the certifications contained in ¶ 20, *supra*.

29. On October 30, 2013, the Company issued a press release titled "Merge Reports Third Quarter Financial Results." Therein, the Company, in relevant part, stated:

***Merge generates record cash from business operations in quarter***

Chicago, IL, 30 Oct 2013

Merge Healthcare Incorporated (NASDAQ: MRGE), a leading provider of clinical systems and innovations that seek to transform healthcare, today announced its financial and business results for the third quarter of 2013.

"Even though overall third quarter sales were down compared to the prior year, we made tangible progress. We realized a record-breaking quarter in cash collections, voluntarily repaid a portion of our debt, streamlined our business operations, grew our subscription-based backlog and implemented a company-wide strategy for ICD-10 across all applicable solutions. Add the launch of the new iConnect® Network for MU Stage 2, our recent award for 'Best in Interoperability' by Frost & Sullivan and our leadership standings in MU for radiology and vendor neutral archiving (VNA) and we're very well positioned for 2014," said Justin Dearborn, CEO of Merge Healthcare. "Further, while the debt refinancing last quarter resulted in $24 million of one-time expenses and $20 million of cash expenditures, we are seeing the positive impacts this quarter with lower interest, which will continue to decrease as we make voluntary repayments."

**Financial Highlights:**

- Sales decreased to $57.2 million ($57.7 million on a pro forma basis) in the third quarter of 2013, from $60.4 million ($61.0 million on a pro forma basis) in the third quarter of 2012;
- Subscription backlog grew 73% since the third quarter of 2012, with growth in both Merge Healthcare and DNA segments;
- Adjusted EBITDA for the third quarter of 2013 was $7.2 million, representing 13% of pro forma revenue for the quarter, compared to $12.5 million and 21% in the third quarter of 2012 with the change primarily a result of an unusually high mix of hardware sales (with lower margins) and $2.3 of non-cash charges in the third quarter of 2013;
- Strong cash collections in the quarter drove an increase in cash generated from business operations to $15.3 million in the third quarter of 2013 from $9.2 million in the third quarter of 2012; and
- Utilized excess cash to voluntarily repay $6 million of debt principal that resulted in a leverage ratio of 5.1 : 1, well within the 5.5 : 1 loan agreement limit.

**Business Highlights:**

- Increased Merge Hemo™ record station sales by 40% year-to-date in 2013 compared to 2012;
- Targeted a new white-space market opportunity for advanced interoperability with the iConnect Network executing 15 early adopter agreements, including two beta site customers, Radiology Ltd. (Tucson, AZ) and Long Island Radiology Associates;
- Saw eClinical backlog increase $29.5 million (127%) to $52.8 million in

the third quarter of 2013, from $23.3 million in the third quarter of 2012;

- Accepted the 2013 North America Frost ¶ Sullivan Award for Product Leadership in Interoperability Solutions for the iConnect Enterprise Clinical Platform;
- Received recognition from IHS for the second year in a row that Merge, through its iConnect Enterprise Archive, is the leading provider for vendor-neutral archive (VNA) solutions in both the world and in the Americas; and
- Was acknowledged, according to data compiled by the U.S. Department of Health and Human Services (HHS), as being the provider of the most widely used Certified Electronic Health Record Technology (CEHRT) by radiologists.

(Emphasis in original).

30. On November 4, 2013, Merge its Quarterly Report on Form 10-Q with the SEC for the 2013 fiscal third quarter. The Form 10-Q was signed by Defendants Dearborn and Oreskovich, and reaffirmed the Company's financial results previously announced on October 30, 2013. The Form 10-Q also contained Sarbanes-Oxley required certifications, signed by Defendants Dearborn and Oreskovich, substantially similar to the certifications contained in ¶ 20, *supra*.

31. Defendants' statements described in ¶¶ 19-30, were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that the existence or amount of certain customer contracts with respect to the Company's eClinical business had been falsified; (2) that, as a result, the Company's reported subscription backlog was overstated; (3) that the Company lacked adequate internal and financial controls; and (4) that, as a result of the foregoing, the defendants' statements about the Company's business, operations and prospects lacked a reasonable basis and were materially false and misleading at all relevant times.

**Disclosures at the End of the Class Period**

32. On January 8, 2014, the Company issued a press release titled "Merge Revises Previously Announced Subscription Backlog Totals." Therein, the Company, in relevant part,

stated

> Merge Healthcare Incorporated (NASDAQ: MRGE), a leading provider of clinical systems and innovations that seek to transform healthcare, recently learned through an internal review that a former sales employee in its eClinical business had falsified the existence or amount of certain customer contracts. Because the company did not, and will not, invoice the customers with respect to the falsified contracts or recognize any revenue with respect to those contracts, this issue will not adversely affect any of the company's previously reported GAAP revenue results for any period. Accordingly, no restatement of any of the company's prior financial statements is necessary or will be made.
>
> *  *  *
>
> ***After initially identifying the issue, the company's senior management conducted a preliminary internal investigation and reported its findings to the Audit Committee of the company's Board of Directors. The Audit Committee then authorized an independent investigation by outside counsel, Jenner & Block LLP, and Alvarez & Marsal Global Forensic and Dispute Services, LLC, a forensic accounting firm. The independent investigation concluded that the former employee had falsified contracts with an apparent value of approximately $5.8 million and $9.4 million in 2012 and 2013, respectively. These amounts were included in the company's previously-announced subscription backlog total during those years,*** but none of the falsified contracts had resulted in the company's recognition of revenue. The independent investigation did not find any evidence that other company employees had participated in, or were aware of, this improper conduct.
>
> The former employee has acknowledged that contracts in question were not valid and has made an offer of restitution. The company believes that the individual, who resigned in September 2013, falsified these contracts in order to achieve sales quotas and receive additional commissions totaling approximately $250,000. The company has referred the matter to the U.S. Attorney's Office for the Northern District of Illinois and is considering other appropriate legal action. The Audit Committee's independent investigation has ended.
>
> ***For calendar year 2013, and prior to the discovery of this issue, the company had modified its compensation plans for its eClinical sales personnel from a plan that was primarily based on contract signings to one that is driven by customer invoicing and cash collections. The company's senior management has identified, and its Board of Directors has adopted, other modifications to the company's internal controls to strengthen its processes for logging customer contracts and calculating commissions for its sales personnel.*** While the company believes its corrective measures will significantly reduce the likelihood of similar occurrences, there can be no assurances in this regard.

(Emphasis added).

33. On this news, shares of the Company declined $0.21 per share, or 8.33%, to close on January 8, 2014, at $2.31 per share, on unusually heavy volume, and further declined by as much as an additional $0.21 per share, or approximately 9%, on January 9, 2014.

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased Merge common stock between August 1, 2012 and January 7, 2014, inclusive (the "Class Period") and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Merge securities were actively traded on the NASDAQ Stock Exchange (the "NASDAQ"). While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Millions of Merge shares were traded publicly during the Class Period on the NASDAQ. As of October 31, 2013, the Company had 94,088,889 shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Merge or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

38. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) Whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations and prospects of Merge; and

(c) To what extent the members of the Class have sustained damages and the proper measure of damages.

39. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

40. The market for Merge securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements and/or failures to

disclose, Merge securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Merge securities relying upon the integrity of the market price of the Company's securities and market information relating to Merge, and have been damaged thereby.

41. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Merge securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Merge's business, operations and prospects as alleged herein.

42. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Merge's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

43. Defendants' wrongful conduct, as alleged herein, directly and proximately caused

the economic loss suffered by Plaintiff and the Class.

44. During the Class Period, Plaintiff and the Class purchased Merge securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

45. As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Merge, his control over, and/or receipt and/or modification of Merge's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Merge, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

46. The market for Merge securities was open, well-developed and efficient at all relevant times. As a result of Defendants' materially false and/or misleading statements and/or failures to disclose, Merge securities traded at artificially inflated prices during the Class Period. On July 25, 2013, the Company's stock closed at a Class Period high of $4.61 per share. Plaintiff

and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Merge securities and market information relating to Merge, and have been damaged thereby.

47. During the Class Period, the artificial inflation in the price of Merge stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Merge's business, prospects and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Merge and its business, operations and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

48. At all relevant times, the market for Merge securities was an efficient market for the following reasons, among others:

(a) Merge stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Merge filed periodic public reports with the SEC and/or the NASDAQ;

(c) Merge regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures,

such as communications with the financial press and other similar reporting services; and/or

(d) Merge was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

49. As a result of the foregoing, the market for Merge securities promptly digested current information regarding Merge from all publicly available sources and reflected such information in Merge's stock price. Under these circumstances, all purchasers of Merge securities during the Class Period suffered similar injury through their purchase of Merge securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

50. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Merge

who knew that the statement was false when made.

## FIRST CLAIM

**Violations of Section 10(b) of The Exchange Act**
**and Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

51. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Merge securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

53. Defendants (i) employed devices, schemes and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Merge securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Merge's financial well-being and prospects, as specified herein.

55. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices and a course of conduct as alleged herein in an effort to assure investors of Merge's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Merge and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

56. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

57. The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Merge's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Merge securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Merge securities during the Class Period at artificially high prices and were damaged thereby.

59. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Merge was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Merge securities, or, if they had

acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

60. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

61. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**

**Violations of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

62. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

63. The Individual Defendants acted as controlling persons of Merge within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the

statements to be corrected.

64. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65. As set forth above, Merge and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 7, 2014

**POMERANTZ LLP**

/s/ *Patrick V. Dahlstrom*
Patrick V. Dahlstrom
Louis C. Ludwig
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Phone: 312-377-1181
Fax: 312-377-1184
pdahlstrom@pomlaw.com
lcludwig@pomlaw.com

-and-

**POMERANTZ LLP**
Jeremy A. Lieberman
Lesley F. Portnoy
600 Park Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile: 212-661-8665

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Michael Goldberg
Robert V. Prongay
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: 310-201-9150
Facsimile: 310-201-9160

**FINKLESTEIN & KRINSK LLP**
Jeffrey R. Krinsk
Mark L. Knutson
501 West Broadway, Suite 1250
San Diego, CA 92101
Telephone: 619-238-1333
Facsimile: 619-238-5425

**LAW OFFICES OF**
**HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: 215-638-4847
Facsimile: 215-638-4867

***Attorneys for Plaintiff***

**SWORN CERTIFICATION OF PLAINTIFF**

Merge Healthcare Incorporated, **SECURITIES LITIGATION**

I, George Petropoulos, certify that:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase Merge Healthcare Incorporated, the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions Merge Healthcare Incorporated, during the class period set forth in the Complaint are as follows:

   See Attached Transactions

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

   ___ Check here if you are a current employee or former employee of the defendant Company.

   I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: Feb. 4, 2014

(Please Sign Your Name Above)

| Date | Transaction | Amount |
|---|---|---|
| 05/07/2013 | Buy 1,000.0000 at $3.25 | $3,257.00 |